jU(]ge Marshall
delivered the Opinion of the Court.
The heirs of Raleigh Chinn instituted this action of ejectment under a patent which issued to their ancestor, in the year 1796; and the heirs of George Poage and of William Bell were made defendants, with the tenants in possession, on whom the declaration was served.
The principal questions presented by the record, grow out of an effort, on the part of the defendants, to bring themselves within the protection of the seven years lira- *51 station act of 1809. In order to do this, they introduced the patent of William Bell, dated 1816, and, after proving that it covered the land which was in possession of four of the five tenants sued in the action, and after proving William Bell’s death prior to 1817, read a power of attorney, dated in 1817, from four persons, of whom three stiled themselves the executors of William Bell, and the fourth claimed an equity in part of the land. The power recites that William Bell had, by his last will, directed his lands in Kentucky to be sold by his executors, and authorizes the attorney to sue for and recover, and to take possession of, or to sell or lease the said land. And they proved, that William J. Bell, wdio was one of the grantors of the power, and is named therein as one of the executors of William Bell, the patentee, was reputed to be one of his heirs, and also to be one of the executors. They then read as evidence, a contract made by the attorney, under the foregoing power, in the names of the grantors, with David Trimble, for the conveyance of one fourth of ten thousand •acres patented to William Bell, and which may be assumed to embrace the land covered by the above mentioned patent; and also a contract between David Trimble and George Poage, dated in April, 1819, whereby Trimble assigns to Poage the one fourth of the ten thousand acres, for which he holds a contract from Bell’s heirs, &c.
It was proved, that George Poage, early in the spring of 1819, or 1820, and after his contract with Trimble, purchased the improvement of Robert Toler, who was living within the interference of the two patents, and got possession, claiming under Bell’s patent, and immediately rented it; and that it has been since continually rented from George Poage and his heirs, down to Kelly, the tenant in possession; that the successive tenants claimed under Poage and his heirs, who always set up claim under Bell’s title, as derived from Trimble. But there was no proof of any connection between the other tenants in possession, besides Kelly, and Poage’s heirs or Bell’s heirs. The action was commenced on the 2nd day July, 1827»
I'ástiúctioñs.
Ail entry, under ;a junior patent, part%rnponone tenement, of a not divest the .possession (held .title) of another ^art—though the try was to, take tesl0n°fthe
On these facts, the defendants asked for throe instructions, embracing substantially the following propositions :—
First. That if Ge'org'e Poage; holding an equitable interest in the land, from William J. Bell, one of the heirs of the patentee, settled a tenant or tenants within the interference, intending to take possession to the extent of Bell’s patent—no person being then in possession within the interference claiming under Chinn's patent— Poage thereby became, possessed to the extent of Bell’s patent.
Second. That if, since the possession was so taken; Poage and his heirs have continued possessed, by the continued residence of their tenants within the interference; the action is barred as to all the land of which they have thus been so possessed for seven years before the commencement of this suits.
Third. That the action is barred aé to all the lands of which the heirs of Bell have been in the adverse possession for seven years before the commencement of this suit, by the continued residence of any persons claiming under them or any of them.
The Court refused these instructions, and instructed the jury, that the seven years limitation could not avail; either Bell’s heirs; or Poage’s heirs, because the former had no such possession, and the latter no such title, as is contemplated by the statute.
The first instruction moved fo‘r the defendants, admits ^at a possession within the interference, if held under the elder patentee; would repel the constructive extenBion 0f Poage’s possession, which might otherwise be the consequence of his entering upon the land m the -manper aild with the intention supposed. But it ex-eludes the idea that any other -possession than that of ^ elder Patentee, would have the same effect. In this .particular the instruction is evidently incorrect as a proposition of law. It would be an entire subversion. of principle to say, that .the bare entry 'on vacant land by one having no right of entry (either for himself or others) would give him possession of tenements on which he made no entry; or that the taking -possession of one *53 tenement in the name of the whole, could give him possession of other tenements, unconnected w'ith that on which he had entered, and occupied by distinct and independent tenants1.
An entry,'to take possession'of Vacant land, may be •effectual if made upon any 'part in the name of the whole’, because there is no existing possession to be divestedi But an entry to gain a possession which is already vested in another, operates by divesting the previous possession; and this it cannot do, even in favor of the legal l’ight of entry, unless made upon the possession which is to be divested. 3. Bl. com. 175; Fox vs. Henton, 4. Bibb, 559. A person in possession without titles may be presumed to be in possession under the paramount legal title, and therefore the entry of the elder patentee, upon every tenement so held, may not be required in order to give him possession of the wholes But there is no such presumption in favor of the junior patent; but the contrary. If therefore, there were any person in possession, within the interference, when Poage entered-, though such person may have claimed under no title, such possession could not be considered .as enuring to the benefit of the junior grant, and it could not be divested by entry either on vacant land-, or on another possession. The evidence in the cause -leaves it at least doubtful, whether there may not have been such a possession; and the objection, that the instruction, either •assumes that there was no such possession, or denies to it any effect upon the question of the extent to which Poage become possessed by his entry, -is sufficient to justify the refusal of the Court to give it as-asked. It is not necessary.to say, and we are not to be -understood •as intimating any opinion .as to .the effect of the entry 'of a junior patentee upon the .possession of another having no title. We only decide, that such possession cannot be divested by an entry of the junior patentee on another part of the land, within his patent.
The second instruction asked for,'being dependent “upon the first, and assuming the extent of Poage’s pos1session to be as asserted in the first, is infected by the same error and subject to the same objection already *54 noticed, and was properly overruled. This objection^ however, goes only to the extent of the possession as. sumed to have been acquired by Poage, and to the extent of the protection afforded by the state; while the instructions actually given by the- Court, deny that the statute was applicable to protect the possession acquired by Poage, whatever might have been its extent.
Á title of record is not requiied to make out the bar under the act of 1809 (7 years Jaw.) fj here must be a grant from the Com’th from which the def’tsP right must be derived, by transfer, or a regular succession of transfers, in law or equity; 8f the proof of each transfer, may be according to the nature of case, é. g. a parol lease may be proved by parol.' And the possession of á tenant enures to the benefit of his landlord for all the purposes of the act
Assuming, as we must do, in considering the propriety of these instructions, that Poage had possession to some extent, by the continued residence of his tenants for seven years before suit brought, the instructions can only be sustained upon the ground that this was no such possession, or that there was no such connection between the possession and the title, as would make out the bar provided by the statute.
It never has been held, nor understood that, to make out the bar under the act of 1809, the whole derivation of title fronj the Commonwealth to the individual in possession, must be evidenced by acts of record. A title from the Commonwealth—which must be of record— being shown, its subsequent transmission to the person claiming a legal or equitable interest under it, may be proved, as in other cases, by such evidence as, applies to, the nature of the conveyance or of the right Set up.
It has been decided by this Court, in the cases of White vs. Bates, 7, J. J. Mar, 542, and Gaines vs. Buford, 1, Dana, 481, that the settlement'and residence of the tenant.enures to the benefit of the landlord, not merely as his possession,, but as his settlement and residence for all the purposes of the 'statute; and that consequently the continued residence of a tenant or tenants for seven years, under a landlord who, during the whole period, has a connected title in law or equity to the land, is a bar under the statute. The relation, then, of landlord •and tenant is a sufficient connection of the possession with the title of the landlord, and as that relation may be created and maintained, for a succession of years by ■parol, so it may be proved by parol. And the existence of this relation between Poage and the tenant or tenants, and their residence for the requisite period upon the land, beipg assumed, the remaining enquiry on this branch of *55 the subject is, whether Poage had, during the same period, a connected title in law or equity, deducible from the Commonwealth,
A power of atto’ recites that the constituents aro ex’ors of a will, with- power to sell the testator’s lands which the - attorney is authorized to convey ; but there is no other proof that the will did in fact contain any such power; but it appears, that one of the grantors of the power (an ex’or) is an heir at law of the testator: a deed, made in pursuance of the power, by the attorney, is good to pass the in-, terest of that one (the heir) in the land, whether he derives that interest from the will, or by descent. Those who claim under such deed, are not estopped by the recitals from showing in the grantor of the power, a ttle d!f ferent from thaf therein recited.
Such a title is attempted to he made out by the exhibition of Bell’s patent, the proof of his death, and of William J. Bell being one of his heirs, the proof of the power of attorney from W, J, Bell and others, and of the contracts dependent on it, under which Poage, claims an interest in the land; and as the interest of Poage, whatever it was, had been acquired more than seven years before the commencement of the suit, the only serious question in this chain of title, arises from the failure of the defendants to show the authority of the grantors of the power as therein recited. To supply this failure, they have proved that William J. Bell, one of the grantors of the power, was one of the heirs of the patentee, and claim that, if there be no such will as is recited in the power, he has an interest in the land by descent, which is bound by the act of the attorney; and that to the extent of that interest, the contract under which Poage claimed maybe enforced in equity---so that whether the recitals in the.power be true or not, they have an equitable title connected with and deducible from the patent.
It is unquestionably true that, so far as William J. Bell has any interest in the land, it is bound by the acts of the attorney under the power, whether there be a will authorizing the executors to sell or not; and that the claimants under the power can reach whatever title is in him, whether he hold as heir or executor. It is also true, that the claimants under the power, are not estopped by its recitals from showing a title in him different from that which the power represents him to have. They have, therefore, the right to prove that he has an interest and title in the land by descent, and to rely upon the presumption in favor of his title by descent. If it be said that such a presumption is rebutted, so far as they are concerned, by the recitals in the power under which they claim—the answer is, that the presumption is only rebutted by the recitals, so far as they tend to prove that there is such a will as they recite. And as there is no other proof or presumption on the subject, but the pre® *56 sumption of title by descent on the one hand, and there? cital of a will giving authority to sell on the other, and as in case either of these alternative facts be taken to be true, there is sufficient title in the grantors, or one of them, to support the claim derived under the power, it seems to us, that, by proving the heirship of William J. Bell and their equitable claim upon him for a title to some portion of the land, whether he hold as heir, or as executor-, the defendants have made out such a connected title in equity, as is sufficient to protect their, possession under the statute.
A contract made ín 1817-19, fqr $he sale of an interest in a land title, which originated under the Jaws of Va. before the separation, was not champertous or illegal.
Where one who is, either in law pr equity, a tenant in common, makes an entry gpon the land, his entry is presumed to have been for his cotenan'ts as well as himself, and bis possession, thus acquired, is coextensive with their common right.
The plaintiff, it is true, contends that the contract be? tween Bell’s heirs and David Trimble is champertous and void; but as it is apparent that Bell’s title originated under the laws of' Virginia, and long before the separation, we are of opinion that this contract was authorized by the act of 1798, and is not illegal. It follows that, in our opinion, the Circuit Court erred 'in instructing the jury that the statute did not protect the possession of Poage’s heirs, for want of such title ás it contemplated.
The next enquiry is, to what extent was the title of Bell connected with the possession of Poage? And the obvious answer, in our opinion, is, that it was connected with it to the full extent of the possession acquired by Poage, claiming under the contract with Trimble. Under that contract he claimed an undivided equitable interest in the patent. In equity he Was tenant in common with Bell’s heirs, or all of them except Wm. J.-Bell, under whom he claimed. In law, his entry is presumed to have been made for them as well as himself, and enures to their be? nefit as well as his own. His possession, in the absence of proof to the contrary, was their possession, whether-held by himself or his tenants; and, as, to its full extent, it was held for their benefit as well as his own, under contract and by operation of law, so is it necessarily connected with, and protected by, their title, to the same extent. The possession of one tenant-in-common strengthens and fortifies the entire title of all the co-tenants, and the title of all protects every part of his possession. If there is any difference between the preseqt case and one in which all the co-tenants haye the *57 legal title, it is, that in this case, the subordination of the possession to the title is stricter and more direct than in the other.
The possession of a. co-tenant is protected by the seven years law! to the same ext tent as tho’ Jie had the tyholé title.
TI;e act protects the whple tra'c{ of which the occupant has acquired possession by settleinent and residence, with title: it is not restricted to the merp closeorirnprove.mont.
Under this view of the subject we are inclined to think, jn opposition Jo the opinion of the Court below, that Bell’s heirs had, by means of the continued residence for seven years of the tenants put upon the land by Poage, such a possession as is contemplated and protected by the statute. But he this as it may, we are decidedly of opinion, that Poage’s heirs, claiming by connected title in equity, an undivided interest in Bell’s patent, can either separately or in conjunction with Bell’s heirs, protect their possession by means of that title, to the same extent as if they held the equitable or legal title to the whole. For an adverse claimant seeking to evict a tenant in common, holding the possession for himself and his co-tenants, cannot be permitted to cut down either his title or his possession to the exact proportion of his interest.
We are also of opinion that, under a fair interpretation of the statute, its • protection is not limited to the mere close or improvement on which the defendant or his tenants may reside; but extends to the whole tract of which the possession is acquired and continued by the actual settlement and residence, under a connected title; qnd that it is limited only by the concurrent extent of the title and possession within which such actual settlement and residence are made and continued. This construction is intimated by the Court in the .case of Davis vs. Young, 2 Dana, 307, and is fortified, as is there observed, by the language used in the ease of Hite's Heirs vs. Shrader, 3 Litt. 445. The fact of settling and residing on the land, is undoubtedly the consideration or motive of the protection given ,by the statute, but the possession so acquired seeins to us, to be eyidently the object of the protection.
A consequence of the several positions which have been adopted, is, that if the first instruction asked for by the defendants were so modified as to assert that, by the entry of Poage, as therein supposed, he became possessed of all the land within Bell’s patent, which was *58 not then in possession of any other, that instruction,, and the second one, might be correctly given, as the case now stands,
A bare claim to be in possession, under the title of another, without proof of any contract express or implied, will not bring ' the case within any statute of limitations.
The third instruction asked for by the defendants, was properly overruled. The bare claim to be in possession under the title of another, without any contract, express or implied, is not evidence of such a connection between the possession and the title, .as is requisite to constitute the bar, under the statute.
It is unnecessary to state the instructions given oil motion of the plaintiff. They relate to a question of fact which has not been noticed, and were erroneous in their literal import, in confining the enquiry of the jury to that single fact, and excluding, not only the facts upon which we have commented, but the evidence in relation to boundary, which was not entirely clear, and in which two of the defendant’s were interested.
For which error, and for the error of instructing the jury that the limitation act of 1809 did not apply to the case, the judgment is reversed, and the cause remanded, that a new trial may be had, on principles not inconsis-. tent with this opinion.